## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**BRANDON C.,**

        **Plaintiff,**

                                          **Civil Action 2:21-cv-301**

    **v.**                                   **Judge Sarah D. Morrison**

                                          **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Brandon C., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 10). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff protectively filed his application for benefits on December 4, 2018, alleging that he has been disabled since July 11, 2018, due to anxiety, depression, and multiple sclerosis.[1] (R. at 217-223, 250.) Plaintiff's application was denied initially in April 2019 and upon

---

[1] Plaintiff also filed an application for Supplemental Security Income but this claim was denied due to Plaintiff's income level. (*See* R. at 136-148, 224-228.)

reconsideration in September 2019.  (R. at 101-134.)  On September 26, 2019, Plaintiff sought a

*de novo* hearing before an administrative law judge.  (R. at 167.)  On April 16, 2020,

administrative law judge Shreese M. Wilson (the "ALJ") held a telephone hearing, at which

Plaintiff, who was represented by counsel, appeared and testified.  (R. at 48-100.)  A vocational

expert, Richard T. Fisher (the "VE") also appeared and testified.  (*Id.*)  On May 11, 2020, the

ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social

Security Act.  (R. at 24-37.)  The Appeals Council denied Plaintiff's request for review and

adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-6.)

## II.     RELEVANT RECORD EVIDENCE

### A.  Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and relevant hearing testimony

as follows:

> [Plaintiff] testified as follows:  He has difficulty climbing stairs. He has lost strength
> on his left side. He uses a cane. He drives once or twice a month. His spouse usually
> drives him places. He is receiving long-term disability. He endorsed dizziness, a
> spinning sensation, numb face, inability to speak, leg and arm numbness, and
> confusion at times. He was diagnosed with multiple sclerosis. His medications
> cause vomiting. At his worst, he is unable to walk very well and has blurry vision.
> He has a pinched nerve in his arm. His fingers go numb. He cannot even hold a
> pencil for 40 seconds. On bad days, he cannot even pick up his 1-year-old son. He
> has brain fog. He can walk around his house, but when he is out and about[,] he
> needs to use a cane.
>
> In a function report, [Plaintiff] alleged that his impairment affect his ability to lift,
> squat, bend, stand, walk, kneel, talk, climb stairs, see, remember, complete tasks,
> concentrate, understand, use his hands, and get along with others.

(R. at 32 (internal citations omitted).)

During the April 16, 2020 administrative hearing, the ALJ questioned the VE about a

hypothetical individual with Plaintiff's vocational profile and a variety of work limitations.  (R.

at 88-92.)  The VE testified that the hypothetical individual could not perform Plaintiff's past

2

work, and that there were other jobs in the national economy that the hypothetical individual

could perform.  (R. at 89.)  On cross-examination, the VE confirmed that he had identified other

jobs with a GED Reasoning Level 2, which led to the following exchange:

> Q:     Okay, Mr. Fisher.  And to the judge's point – and she's right, I did ask one too many of those questions.  But let me restate, because I'm feeling that I'm not getting a clear answer here.  But my question was – and this is restated to correct it.  But, **would it be correct to say that the ALJ's limitation of simple and routine tasks would preclude the ability to carry out detailed written and oral instructions? Is that correct, or is that not correct?**

> A:     No.  **You're right.  If it's not detailed, then it's got to be Reasoning Level 1.  Reasoning Level 2 is the ability to learn and exercise detailed but not complex or involved.  So, that would be Reasoning Level 1.**  The – and the jobs that I would identify for you would be, in answer to your hypothetical, not detailed but simple one and two step.  **Then we'd have to go with different examples of jobs.  That's narrowing the field substantially.**  But there's been no – I would say that there's been no case, or there's been no explanation why this person has limited ability to learn, and that's what you're trying to – that's what you're trying to say.  I mean, he's obviously not.

(R. at 97-98 (emphasis added).)  After Plaintiff's counsel's cross-examination, the ALJ did not

address this testimony with the VE on re-direct examination.  (R. at 98-100.)

### B.     Relevant Medical Records

The ALJ summarized the relevant medical records as follows:

In evaluating [Plaintiff's] neurological functioning, the undersigned notes that he did not have an ataxic gait. His gait was normal. His gait was steady. On occasion, he was noted to have a cautious wide based gait. However, at times, he was noted to have some balance issues with tandem gait. Records dated November 27, 2019, and February 19, 2020, indicate that he was ambulating with a cane. However, records dated January 30, 2020 revealed a normal gait with no mention of the use of a cane. There is no evidence that [Plaintiff's] cane was prescribed by medical professionals; further, given the above evidence, the undersigned finds that the use of an assistive device is not medically necessary. [Plaintiff] had normal (5/5) motor strength. He had no focal weakness. At times, [Plaintiff] was noted to have mild lower extremity weakness (-5/5). Other records indicate 4/5 strength in lower extremities. She [sic] had normal muscle tone and bulk. His deep tendon reflexes were normal and symmetric. His sensation was intact. Other records indicate

decreased sensation.

However, the undersigned notes that [Plaintiff] has reported fatigue, poor attention and concentration, dysarthria, swallowing issues, gait impairment from dizziness, paranesthesia, and blurry vision to providers.

Imaging of the brain revealed numerous small foci of signal alteration in the white matter, consistent with demyelinating disease. Subsequent imaging revealed multiple punctate areas of abnormal signal noted in the subcortical white matter of both cerebral hemispheres.

With regard to [Plaintiff's] cubital tunnel syndrome, the undersigned notes that [Plaintiff] had normal (5/5) motor strength. He had no focal weakness. His deep tendon reflexes were normal and symmetric. His sensation was intact. Other records indicate decreased sensation. Electromyography studies confirmed ulnar mononeuropathy at the level of the elbow bilaterally. Despite surgical treatment, he has continued to experience symptoms. The undersigned finds that based on the evidence above, the reduction to less than the full range of light work adequately accounts for [Plaintiff's] cubital tunnel syndrome.

As a threshold matter, the undersigned is cognizant of the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses. Accordingly, the undersigned has considered [Plaintiff's] psychological symptoms and their effect on functioning together, instead of separately, regardless of the diagnostic label attached. On examination, [Plaintiff] had normal/intact memory. His fund of knowledge was intact. Contrary to [Plaintiff's] education records, his intelligence was estimated to be in the average range. He was cooperative. Providers even described [Plaintiff] as pleasant. His eye contact was normal. He was alert and fully oriented. He followed commands well. [Plaintiff's] attention and concentration were within normal limits/intact. Other records indicate slight impairment in attention span. [Plaintiff's] attention and concentration skills were described as marginally adequate. His thought processes were logical, linear and goal directed. He had normal/intact judgment and insight. Other records indicate some difficulty with problem solving and judgment.

The undersigned notes that a neuropsychological evaluation was considered invalid an uninterpretable, due to performing "significantly below expectation on multiple stand-alone and embedded performance validity tests," as well as "over-reporting" of symptomatology.

(R. at 33-34 (internal citations omitted).)

4

## III.    ADMINISTRATIVE DECISION

On May 11, 2020, the ALJ issued her decision.  (R. at 24-41.)  The ALJ found that

Plaintiff meets the insured status requirements of the Social Security Act through

June 30, 2024.  (R. at 29.)  At step one of the sequential evaluation process,[2] the ALJ found that

Plaintiff has not engaged in substantial gainful activity since July 11, 2018, the alleged onset

date.  (*Id.*)  The ALJ found that Plaintiff has the following severe impairments: multiple

sclerosis, bilateral cubital tunnel syndrome, anxiety, and depression.  (*Id.*)  The ALJ further found

that Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  (*Id.*)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, and scaffolds, but may occasionally climb ramps and stairs. [Plaintiff] can occasionally balance and crawl. He can frequently kneel and crouch. He should avoid concentrated exposure to excessive vibration. He should avoid all exposure to hazards such as unprotected heights and hazardous machinery. [Plaintiff] should avoid concentrated exposure to extreme cold and heat. [Plaintiff] retains the capacity for a simple, routine environment with non-strict production standards.

(R. at 31.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to

perform his past relevant work as a customer service representative, a food manager, or a

carpenter.  (R. at 38-39.)  Relying on the VE's testimony, the ALJ concluded that Plaintiff can

perform other jobs that exist in significant numbers in the national economy.  (R. at 39-40.)  She

therefore concluded that Plaintiff has not been disabled since July 11, 2018.  (R. at 40.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.   ANALYSIS

Plaintiff puts forth one assignment of error, arguing that the ALJ's decision lacks substantial evidence due to unresolved conflicts in the VE's testimony.  (ECF No. 11 at PAGEID ## 1329-1332.)  Specifically, Plaintiff argues that "the ALJ's step five finding is contradictory to the VE testimony elicited during cross-examination at hearing and should be reversed upon that basis, alone."  (*Id.* at PAGEID # 1329.)  Plaintiff highlights that on cross examination, the VE confirmed that a hypothetical applicant who was limited to "simple, routine" work would be limited to a job with a GED Reasoning Development Level 1 – not Level 2 jobs as the VE had discussed during the administrative hearing.[3]  (*Id.* at PAGEID # 1330.)  The VE testified that

---

[3] GED Reasoning Development Level 1 jobs require individuals to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized

7

"we'd have to go with different examples of jobs" that would "narrow[] the field substantially." (*Id.* (citing R. at 98).)  Given this testimony, Plaintiff argues that "the ALJ's decision is rendered baseless because she did not follow up with the VE to ask *how* substantially the limitation narrowed the job field."  (*Id.*)  Plaintiff argues that "the ALJ must attempt to resolve the conflict by eliciting reasonable explanations from the VE before relying upon the VE's conflicting testimony and explain in the decision how the conflict was resolved."  (*Id.* at PAGEID # 1331.) Instead, Plaintiff argues, "the ALJ tidily glossed over the issue, relying on her own lay opinion that [the VE's] testimony was consistent with the [Dictionary of Occupational Titles ("DOT")]." (*Id.* at PAGEID # 1332.)

In response, the Commissioner concedes that "Plaintiff correctly notes that the ALJ failed to identify and attempt to resolve the conflict per SSR 00-4p," and counters by arguing that "any discrepancy is harmless error."  (ECF No. 16 at PAGEID ## 1345-1351.)  The Commissioner argues that "there is a significant amount of evidence that Plaintiff's ability to learn and reason is not limited to jobs with a reasoning level of 1 despite the [RFC] limitation to a 'simple, routine environment.'"  (*Id.* at PAGEID # 1348.)  The Commissioner further argues that "[t]he record supports the [VE] that there is no support for limiting Plaintiff's ability to learn," and cites the opinion of consultative examiner Dr. Sexton.  (*Id.* at PAGEID ## 1348-1350.)  The Commissioner concludes that "[w]ith the harmless error regarding the [VE] testimony, the ALJ's analysis otherwise followed the applicable regulations and rulings and was supported by

---

situations with occasional or no variables in for from these situations encountered on the job," while Level 2 jobs required individuals to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations."  *Heffelfinger v. Astrue*, No. 1:10CV2892, 2012 WL 1004722, at *7 (N.D. Ohio Mar. 23, 2012) (citing Dep't of Labor, Dictionary of Occupational Titles, App'x C(III), 1991 WL 688702 (G.P.O.) (4th ed., rev'd 1991)).

substantial evidence as required by law and should receive deference." (*Id.* at PAGEID # 1351.) Plaintiff did not file a Reply brief. Accordingly, the matter is ripe for judicial review.

Because the Commissioner does not dispute that the ALJ committed error, the only issue before the Court is whether such error was harmless or reversible. To this end, the Court agrees with the Commissioner that the Court of Appeals for the Sixth Circuit's decision in *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430 (6th Cir. 2016), is instructive. In *Joyce*, the ALJ found that the claimant was limited to work that involved "simple, one-, two-, and three-step instructions," but adopted the VE's testimony that the claimant could perform jobs which required a Reasoning Development Level of 3, which the DOT defines as the ability "to carry out instructions furnished in written, oral, or diagrammatic form," and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*, 662 F. App'x at 435-436 (citing DICOT 211.462-010 (G.P.O.), 1991 WL 671840 (4th ed. 1991)). After recognizing the inconsistency, the Sixth Circuit discussed the ALJ's regulatory duty in such circumstances:

> Social Security Ruling (SSR) 00-4p imposes on ALJs an affirmative duty to ask VEs if the evidence they provide "conflicts with the information provided in the DOT" and to resolve any "apparent conflicts." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). In this circuit, an ALJ satisfies her duty to inquire if she asks the VE whether the VE's testimony is consistent with the DOT and receives an affirmative response. *See Martin v. Comm'r of Soc. Sec.*, 170 Fed.Appx. 369, 374 (6th Cir. 2006).

*Id.* at 435. In *Joyce*, the ALJ "neither asked about nor resolved the conflict that [Plaintiff] asserts." *Id.* The Sixth Circuit was thus tasked with determining the proper remedy. It ultimately held that whether such failure constitutes reversible error should be determined on a case-by-case basis. *Id.* at 435-437 ("We accordingly . . . leave open the possibility that an ALJ might reversibly err by failing to inquire about or resolve a conflict between the DOT reasoning

levels and a simple-tasks limitation.").  As the Court held, this approach allows courts to "look[]
to whether the DOT reasoning levels are inconsistent with a particular claimant's actual
limitations."  *Id.* at 436 (citing *Zirnsak v. Colvin*, 777 F.3d 607, 618-619 (3d Cir. 2014)).

      Here, the administrative hearing transcript confirms that the ALJ neither asked about nor
resolved the conflict identified by Plaintiff, as was the case in *Joyce*.  R. at 48-100.  But while
Plaintiff stresses that such error was reversible, the Undersigned finds the Commissioner's
arguments to the contrary to be well taken.  Indeed, a closer look at Plaintiff's Statement of
Errors confirms that Plaintiff's entire argument hinges on the procedural error committed by the
ALJ, as Plaintiff argues that the case "should be reversed upon that basis, alone."  (ECF No. 11
at PAGEID ## 1329-1333.)  Plaintiff conspicuously does not argue that he is incapable of work
at a GED Reasoning Development Level of 2.  The Undersigned agrees with the Commissioner
that the record evidence suggests that he can perform at such level.  *See Joyce*, 662 F. App'x at
437 ("[Plaintiff] does not argue that he is incapable of performing the work of a cashier or ticket
seller, perhaps because the evidence suggests that he can.").

      Specifically, substantial evidence throughout the record supports the Commissioner's
argument that "Plaintiff's ability to learn and reason is not limited to jobs with a reasoning level
of 1 despite the [RFC] limitation to a 'simple, routine environment.'"  (ECF No. 16 at PAGEID #
1348.)  First, for example, the VE's testimony that Plaintiff is "obviously not" limited in his
ability to learn, which demonstrates an ability to work at a Reasoning Level 2.  (R. at 98
("Reasoning Level 2 is the ability to learn and exercise detailed but not complex or involved . . . .
there's been no explanation why [Plaintiff] has limited ability to learn, and that's what you're
trying to – that's what you're trying to say.  I mean, he's obviously not.").)  And as the
Commissioner notes, the VE's comment is consistent with other evidence throughout the record,

10

including the opinion of consultative examiner Richard E. Sexton, Ph.D.  (R. at 636-642.)

Throughout his opinion, Dr. Sexton consistently evaluates Plaintiff's intelligence and ability to

learn as "average," and Dr. Sexton notes that "significant deterioration in mental functioning is

[not] expected."  (R. at 641.)  When asked to translate his evaluation into a functional

assessment, Dr. Sexton opined that Plaintiff "is expected to be able to understand and apply

instructions in the work setting consistent with average intellectual functioning" and that he

"demonstrated no difficulty maintaining attention/concentration and a task focus in performing

simple as well as multi-step tasks during the present evaluation."  (R. at 642.)

 The ALJ found Dr. Sexton's opinion to be persuasive and "generally consistent with the

totality of the evidence received at the hearing level."  The Undersigned agrees.  (R. at 36.)  As

the Commissioner correctly notes, "the record is replete with references to normal memory,

attention span, intelligence, concentration, and fund of knowledge from multiple medical

professionals."  (ECF No. 16 at PAGEID # 1349 (citing R. at 482, 641, 648-656, 797-798, 1028,

1186).)  The Undersigned finds that these references, in addition to Dr. Sexton's opinion and the

VE testimony, constitute substantial evidence sufficient to support the ALJ's finding that Plaintiff

can perform work at a GED Reasoning Development Level 2.  *Joyce*, 662 F. App'x at 436-437.

Accordingly, the Court finds that the ALJ's error was harmless.

## VI.    CONCLUSION

 In sum, from a review of the record as a whole, the Undersigned concludes that

substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is

therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that

the Commissioner's decision be **AFFIRMED.**

11

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:     April 6, 2022                         /s/ *Elizabeth A. Preston Deavers*
                                       Elizabeth A. Preston Deavers
                                       United States Magistrate Judge

12